IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

|  |  |  |
|---|---|---|
| CHERYL VICKERS, | : | |
|  | : | |
| Plaintiff, | : | CIVIL ACTION NO. |
|  | : | 1:05-CV-0930-RWS |
| v. | : | |
| DOUG WELLS, | : | |
|  | : | |
| Defendant. | : | |

**ORDER**

This case comes before the Court on Defendant's Motion to Dismiss or, in the Alternative, to Transfer Venue [3-1], Defendant's Motion for Summary Judgment [40-1], and the parties' Consent Motion to Seal Court Records [44-1].

First, as a preliminary matter, the parties' Consent Motion to Seal Court Records [44-1] is **GRANTED**. The Clerk is **DIRECTED** to place under seal all the materials contained at Docket Entry No. 40. Second, and for all the reasons that follow, the Court finds that Defendant is entitled to relief on his

AO 72A
(Rev.8/82)

Motion to Dismiss or, in the Alternative, to Transfer Venue [3-1], and thus, does not consider the merits of his Motion for Summary Judgment [40-1].

## Pertinent Factual Background

In July of 2004, Plaintiff Cheryl Vickers and her brother, David Vickers, sold their interests in a company known as InTown Holding Company, LLC to an investment fund managed by Lazard Freres Real Estate Investors LLC for over $11 million. Shortly thereafter, on or about October 7, 2004, Plaintiff entered into an Employment Agreement (the "Agreement") with InTown Suites Management, Inc. ("InTown"), agreeing to serve as Senior Adviser to Defendant, InTown's President, for a term ending on December 31, 2004. While Plaintiff, in her Complaint, alleges that she "performed her duties as Senior Advisor as required under the Agreement," she states Defendant nevertheless purported to terminate her employment "for cause" on December 30, 2004. (See Compl. ¶¶ 5-6.)

The Agreement contained rather detailed terms respecting termination of the employment relationship. First, it limited the instances in which Plaintiff could be terminated for cause, including, among others,

> (iii) any act or acts of fraud or embezzlement by [Plaintiff] or misappropriation by [her] of funds of the Company or any of its Subsidiaries or any of their respective customers or suppliers, [or]
>
> . . .
>
> (v) [Plaintiff's] willful malfeasance or willful misconduct in connection with [her] duties hereunder or any act or omission by [her] (including any act or omission that [she] causes the Company or any of its Subsidiaries to take or not to take but excluding any act or omission by [Plaintiff] with a good-faith belief that such act or omission was in the best interests of the Company and its Subsidiaries) which is materially injurious to the financial condition or business reputation of the Company or any of its Subsidiaries [or] Affiliates . . . .

(Employment Agreement at § 8(a).)  In addition, the Agreement provided that:

> Any purported termination of employment by the Company or by [Plaintiff] . . . shall be communicated by written Notice of Termination to the other party hereto in accordance with Section 13(g) hereof. For purposes of this Agreement, a "<u>Notice of Termination</u>" shall mean a notice which shall indicate the specific termination provision in this Agreement relied upon and shall set forth in reasonable detail the facts and circumstances claimed to provide a basis for termination of employment under the provisions so indicated.

(<u>Id.</u> at § 8(f).)

3

Plaintiff, in connection with her December 30, 2004 termination, received a letter from Defendant purporting to be the "Notice of Termination" required by Section 8(f) of the Employment Agreement. In that letter, Defendant cited as the basis for Plaintiff's termination both "fraud, embezzlement, and misappropriation of funds of the Company and/or its Subsidiaries" under § 8(a)(iii), and "act[s] or omission[s] . . . which [are] materially injurious to the financial condition or business reputation of the Company or any of its Subsidiaries or Affiliates" under § 8(a)(v). (See Dec. 30, 2004 Letter.) In support of these assertions, Defendant stated:

> The Company has discovered that, at your direction and with your knowledge and approval, Company property was freely used for non-Company business, including but not limited to, rooms at various InTown Suites' hotels and an apartment at the Northside Drive facility which were used for the sole benefit of Budgetline – a company owned and operated by David Vickers. The Company has further become aware of conduct on your part designed to conceal these acts of fraud, embezzlement and misappropriation, and you have made a series of false representations to the Company also designed to conceal your unlawful acts.

(Id.)

4

Plaintiff contends that the accusations contained in the letter are false, and that Defendant failed to conduct a reasonable investigation regarding the truth of such statements. Moreover, she avers that Defendant has both published the Notice of Termination, and "communicated his accusations of fraud, embezzlement and misappropriation of company funds contained in the Notice" to persons and entities with no reason "to receive the Notice, nor a need to know the accusations contained therein." (Compl. ¶¶ 12-13.) Relying on such allegations, Plaintiff sued Defendant for libel, slander, punitive damages, fees, and costs in the State Court of Fulton County, Georgia.

Defendant removed the case to this Court, and shortly thereafter, moved to dismiss the action for improper venue or, alternatively, to have it transferred to the United States District Court for the Southern District of New York. In support of this request, Defendant cited § 13(a) of the Employment Agreement, which provides:

> (a) Governing Law/Venue. This Agreement shall be governed by and construed in accordance with the laws of the State of New York without regard to conflicts of laws principles thereof. Any claim or controversy arising out of or relating to this Agreement or the breach hereof shall be brought and prosecuted in the courts of the State of New York or

5

of the United States for the Southern District of New York situated in New York, New York.

(See Employment Agreement § 13(a).)  Plaintiff opposes this motion.

## Discussion

Where a litigant moves to enforce a forum selection clause calling for an action to proceed in another federal court, rather than in a state court or a foreign forum, a court should evaluate the request under 28 U.S.C. § 1404(a). See P & S Bus. Machs., Inc. v. Canon USA, Inc., 331 F.3d 804, 807 (11th Cir. 2003) (per curiam) ("Consideration of whether to enforce a forum selection clause in a diversity jurisdiction case is governed by federal law, under 28 U.S.C. § 1404(a) . . . .").[1]  Once it is shown that the dispute in question falls

---

[1]Defendant urges that the Eleventh Circuit has approved of dismissal where a litigant brings suit in a forum other than that selected by the parties' agreement.  Where the relevant forum selection clause requires prosecution of the suit in another country's courts, that is no doubt the case.  See Lipcon v. Underwriters at Lloyd's, London, 148 F.3d 1285, 1290-91 (11th Cir. 1998) (treating motion to enforce forum selection clause calling for litigation to proceed in England as one to dismiss for improper venue); see also Exter Shipping Ltd. v. Kilakos, 310 F. Supp. 2d 1301, 1309 (N.D. Ga. 2004) (analyzing forum selection clause requiring litigation of disputes in England, stated: "The parties' agreement to litigate elsewhere may be enforced by a motion to dismiss for improper venue, or in this case the Motions to Dismiss for *Forum Non Conveniens*.").  The same is not true, however, where a party requests a transfer from one United States District Court to another.  See, e.g., Digital Envoy, Inc. v. Google, Inc., 319 F. Supp. 2d 1377, 1379 (N.D. Ga. 2004) (so holding).

AO 72A
(Rev.8/82)

within the operation of the clause, "[t]he burden is on the party opposing the enforcement of the forum selection clause to show that the contractual forum is sufficiently inconvenient to justify retention of the dispute." Id.; see also In re Ricoh Corp., 870 F.2d 570, 574 (11th Cir. 1989) ("This suit, therefore, does not present the type of 'exceptional' situation in which judicial enforcement of a contractual choice of forum clause would be improper."); Picken v. Minuteman Press Int'l, Inc., 854 F. Supp. 909, 911 (N.D. Ga. 1993) ("This burden [to persuade the court that the contractual forum is sufficiently inconvenient] is extremely difficult to overcome."). Thus, while not necessarily determinative on the issue of transfer, forum selection clauses are entitled to unique and considerable weight in the § 1404(a) analysis. See Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29, 108 S. Ct. 2239, 101 L. Ed. 2d 22 (1988) ("The presence of a forum-selection clause such as the parties entered into in this case will be a significant factor that figures centrally in the district court's calculus."); In re Ricoh Corp., 870 F.2d at 573 ("[W]hile other factors might 'conceivably' militate against transfer . . . , venue mandated by a choice of forum clause rarely will be outweighed by other 1404(a) factors.").

Here, Plaintiff acknowledges these principles, but nevertheless opposes transfer to the District Court for the Southern District of New York.  First, she claims that Defendant lacks standing to enforce the clause, because the Employment Agreement was between her and InTown, and Defendant, consequently, is a "non-party" to the contract.  Second, she urges that this suit falls outside the purview of the forum selection clause.  Finally, she states that the Southern District of New York is not a "district or division where [the action] might have [originally] been brought[,]" and thus, transfer pursuant to § 1404(a) is unavailable.  The Court does not find these arguments persuasive.

First, the Eleventh Circuit has joined with other federal courts in declining to disallow invocation or application of a forum selection clause by non-parties to the agreement. Rather, it has defined the inquiry as whether the litigant in question is " 'closely related' to the dispute such that it becomes 'foreseeable' that it will be bound" by the contractual selection of a litigation forum.  Lipcon, 148 F.3d at 1299 (quoting Hugel v. Corp. of Lloyd's, 999 F.2d 206, 209 (7th Cir. 1993)).  If so, then the party is deemed to fall within the "range of transaction participants, parties and nonparties, [that] should benefit from and be subject to forum selection clauses."  Id. (quoting Manetti-Farrow, Inc. v.

Gucci Am., Inc., 858 F.2d 509, 514 n.5 (9th Cir. 1988)); see also Clinton v. Janger, 583 F. Supp. 284, 290 (N.D. Ill. 1984) (relying on rule, held that non-party had standing to enforce forum selection clause).  Being a party to the agreement, or indeed, even a third-party beneficiary, simply is not a precondition to enforcement.  Lipcon, 148 F.3d at 1299.

Here, the Court finds that Defendant is plainly entitled to enjoy the benefits of the forum selection clause.  Cf., e.g., Nanopierce Techs., Inc. v. Southridge Capital Mgmt. LLC, 2003 WL 22882137, at *5-*6 (S.D.N.Y. 2003) (relying on Eleventh Circuit's decision in Lipcon, held CFO of contracting company could be held subject to forum selection clause).  The Employment Agreement defines Plaintiff's role as a Senior Adviser *to* Defendant, the President of InTown.  Indeed, her position was described in § 2(a) of the Agreement with pronounced emphasis on her working relationship with Defendant:

> [Plaintiff] shall serve as senior advisor to the Company.  In such position, [she] shall advise *the President of the Company* on matters relating to the transition of ownership in transition of management of the Company as directed by *the President of the Company* and shall perform such duties as shall be determined from time to time by the Membership

9

> Committee of Holding . . . or *the President of the Company* related to the transition of ownership and transition of management of the Company. In addition, at the direction of *the President of the Company*, [Plaintiff] will perform roles consistent with those performed by her while employed as Chief Operating Officer of the Company.

(See Employment Agreement § 2(a) (emphases supplied).) Given the character of Plaintiff's employment, it would be anomalous to hold that Defendant was not sufficiently "closely related" to the contract and to this dispute to bring him within the class of persons who could "foreseeably" be bound by (or invoke) the choice of forum reflected therein.

Likewise, the Court does not find that this controversy falls outside the ambit of the Agreement's rather broad forum selection clause. "Whether tort claims are governed by [a] forum selection provision[ ] depends upon the intention of the parties as reflected by the wording of the particular clauses and the facts of each case." Digital Envoy, Inc., 319 F. Supp. 2d at 1380; see also McNair v. Monsanto Co., 279 F. Supp. 2d 1290, 1307 (M.D. Ga. 2003) (holding likewise).

Here, the clause, in pertinent part, provides:

10

AO 72A
(Rev.8/82)

> Any claim or controversy arising out of or relating to this Agreement or the breach hereof shall be brought and prosecuted in the courts of the State of New York or of the United States for the Southern District of New York situated in New York, New York.

(See Employment Agreement § 13(a).) The Eleventh Circuit has interpreted similarly worded clauses expansively. For example, in Stewart Organization, Inc. v. Ricoh Corp., 810 F.2d 1066 (11th Cir. 1987) (en banc), aff'd and remanded on other grounds, 487 U.S. 22, 108 S. Ct. 2239, 101 L. Ed. 2d 22 (1988), it was asked to construe a clause that purported to govern the situs of litigation in "any case or controversy arising under or in connection with" the parties' contract. Stewart Organization, Inc., 810 F.2d at 1067. Holding it applicable to claims for breach of contract, breach of warranty, fraud, and antitrust violations, the Circuit reasoned:

> This [language] includes all causes of action arising directly or indirectly from the business relationship evidenced by the contract. In Bense [v. Interstate Battery System of America, 683 F.2d 718 (2d Cir.1982)], the Second Circuit read the language of a forum selection clause that encompassed actions arising "directly or indirectly" from the contract as permitting the court to order transfer of the entire case. [Cit.] This principle is sound because it promotes a more orderly and efficient disposition of the case in accordance with the parties' intent. This is

11

>consistent with the Supreme Court's directive in . . . Bremen [v. Zapata Off-Shore Co., 407 U.S. 1, 92 S. Ct. 1907, 32 L. Ed.2d 513 (1972)] to encourage commercial reliance on forum selection clauses and thus keep intact the usefulness of these agreements. Commercial contractual issues are commonly intertwined with claims in tort or criminal or antitrust law.
>
>For the reasons foregoing, we find the choice of forum clause in this contract is in all respects enforceable generally as a matter of federal law and specifically within the confines of this case.

Id. at 1070-71.[2] Other courts have expressed a similar inclination to read broad choice-of-forum clauses broadly. See Hugel, 999 F.2d at 208 (construing broadly worded clause, held: "We hold that all of the plaintiffs' claims arise from the contractual relationship and are therefore within the scope of the forum selection clause."); Digital Envoy, Inc., 319 F. Supp. 2d at 1380 (rejecting

---

[2]Plaintiff argues that, because the Eleventh Circuit dismissed the lower court's concern that a narrow reading of the clause at issue in Stewart would result in the undesirable division of the suit in multiple fora, its focus on "a more orderly and efficient disposition of the case" was unique to the facts of that controversy. See Stewart Organization, Inc., 810 F.2d at 1070. This Court, however, does not read Stewart to announce such a narrow or result-oriented rule. Rather, it reads the language as underscoring the Circuit's recognition that, when parties have agreed to a broadly worded forum selection clause, their manifest intent should not be undermined by artful pleading or pedantic distinctions. Indeed, nothing in Stewart suggests it should be interpreted as permitting the transfer of a case involving contract and tort claims to another fora based on a broadly worded forum selection clause, but denying like treatment to the same tort claims uncoupled from their contract law companions.

argument that choice-of-law clause ostensibly covering disputes "regarding" or "relating to" agreement did not govern tort claims that were allegedly "independent" of the agreement); Clinton, 583 F. Supp. at 287 ("Other courts have enforced 'general' forum selection clauses so as to subsume within a clause's coverage both contract and tort claims.").[3]

The same result is warranted here.  The Agreement's forum selection clause, insofar as it encompasses "[a]ny claim or controversy. . . relating to this Agreement[,]" (see Employment Agreement § 13(a)), does not invite artificial distinctions.  Plaintiff's claims take issue with her termination from employment and a Notice of Termination that is mandated by, and quotes extensively from, her Employment Agreement.  To be sure, she has not raised a claim for "breach of contract," and the gravamen of her suit is the "publication" of the Notice and its contents to others, rather than its creation or its transmission to her.  But to

---

[3]The cases relied on by Plaintiff to advance a more restricted construction dealt with clauses that were far more narrow in their purported reach than that at issue here.  See, e.g., Lou Bachrodt Chevrolet v. Reicheld Corp., 01 C 50325, 2002 US Dist. LEXIS 11338, at *2 (N.D. Ill. June 25, 2002) (narrowly construing clause providing that "validity and interpretation" of contract was to be governed by Michigan law, and that Bloomfield Hills, Michigan was the situs of the contract and "shall be the forum"); Berrett v. Life Ins. Co. of the S.W., 629 F. Supp. 946, 947 (D. Utah 1985) (construing clause, "The parties agree that any action in law or in equity hereunder shall be brought in Dallas County, Texas[,]" as excluding tort claims).

hold that such actions do not so much as "relat[e] to" the Employment Agreement confines the concept of relation more severely than any with which this Court is familiar. Cf. Stewart Organization, Inc., 810 F.2d at 1070 ("This [language] includes all causes of action arising directly or indirectly from the business relationship evidenced by the contract."); Clinton, 583 F. Supp. at 287 ("If forum selection clauses are to be enforced as a matter of public policy, that same public policy requires that they not be defeated by artful pleading of claims . . . .") (quoting Coastal Steel Corp. v. Tilghman Wheelabrator, Ltd., 709 F.2d 190, 203 (3d Cir. 1983), overruled on other grounds by Lauro Lines v. Chasser, 490 U.S. 495, 109 S. Ct. 1976, 104 L. Ed. 2d 548 (1989)).

Finally, the Court finds Plaintiff's § 1404(a) argument unavailing. Without question, § 1404(a) permits transfer of a civil action to another district or division only if the transferee court is one "where [the action] might have been brought." 28 U.S.C. § 1404(a). Here, however, the forum selection clause, executed by Plaintiff well prior to the commencement of this suit, precludes any objection from her now that venue would–at the time suit was filed–have been improper in the selected forum. See McNair, 279 F. Supp. 2d at 1309 ("The valid forum selection clause in this case establishes that this is a case that might

have been brought in the United States District Court for the Eastern District of Missouri."); see also Kotan v Pizza Outlet, Inc., – F. Supp. 2d –, 2005 WL 2861165, at *4 (D.D.C. Oct. 28, 2005) (as an independent basis for holding that prospective transferee court was one in which suit could have been brought, relied on forum selection clause); Chet Baker Enters., L.L.C. v. Fantasy, Inc., 257 F. Supp. 2d 592, 596 (S.D.N.Y. 2002) (holding likewise).  This aspect of § 1404(a) accordingly poses no bar to the transfer of this civil action to the United States District Court for the Southern District of New York.

In sum, the Court finds Plaintiff's arguments against enforcement of the forum selection clause unavailing.  Moreover, she has not carried, and, indeed, has not attempted to carry her burden of showing that this is one of the rare and exceptional cases in which effectuation of the clause's mandate would be improper.

## Conclusion

The parties' Consent Motion to Seal Court Records [44-1] is **GRANTED**.  The Clerk is **DIRECTED** to place under seal all the materials contained at Docket Entry No. 40.  Defendant's Motion to Dismiss or, in the Alternative, to Transfer Venue [3-1] is **GRANTED in part and DENIED in**

15

**part**. It is denied insofar as Defendant requests that this case be dismissed under Federal Rule of Civil Procedure 12(b)(3). It is granted insofar as he seeks § 1404(a) transfer of this case to the United States District Court for the Southern District of New York. The Clerk is accordingly **DIRECTED** to transfer this action to the United States District Court for the Southern District of New York. In light of this decision, Defendant's Motion for Summary Judgment [40-1] is left for resolution by the transferee court.

    **SO ORDERED** this  10th  day of January, 2006.


                    /s/ Richard W. Story
                    RICHARD W. STORY
                    UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)